Welcome everybody to Oral Argument of the Fourth Circuit. Today we'll start with our first case. Council. May it please the court, Joshua Block on behalf of the plaintiff Jesse Hammons. The government shouldn't be running a religious hospital or enforcing religious doctrine, but that's exactly what the University of Maryland Medical System has been doing for the past 13 years. When UMMS purchased St. Joseph's Hospital in 2012, it signed an agreement with the Archdiocese of Baltimore promising that it would run the hospital as a Catholic institution and that it would comply with the ethical and religious directives of the U.S. Conference of Catholic Based on those directives, St. Joseph's canceled Mr. Hammons' medically necessary surgery because gender transitioning of any kind is intrinsically disordered. Mr. Hammons sued, alleging that denying him medical care on that basis violated the Establishment Clause of the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, and Section 1557 of the Affordable Care Act. The District Court ultimately granted summary judgment to Mr. Hammons on a Section 1557 claim, but dismissed the constitutional claims based on sovereign immunity. We've appealed that dismissal. Defendants have filed two motions to dismiss the appeal, and they filed their own cross-appeal under Section 1557. Unless the Court has a different order of preference, I'll begin with the motions to dismiss. Could I start? Yes. So I want to give you a hypothetical that I think sort of crystallizes the mootness or standing to appeal. I'm still trying to figure out if I think this is mootness or standing to appeal. So I want you to imagine counterfactually that the only claim you've ever brought in this case was the constitutional claim. There was never an Affordable Care Act claim. I want you to assume that otherwise, though, the complaint is identical to the complaint you filed in this case, specifically that you did not claim emotional distress damages in that complaint, just like you did not claim emotional distress damages in this complaint. I want you to assume the same stipulation about damages that happened in that case that you, sorry, and counterfactually that you won your constitutional claim in that case with the same damages stipulation as in this case. What is the maximum amount of damages you could have gotten in that case? Well, the maximum amount of compensatory damages. Damages of any kind in that case. Well, Your Honor, I guess, are there two constitutional claims or just a single one? No, one. It's one. We've just omitted, we've just cut out your ACA claim. It's exactly the same constitutional claim. Right, except there are two constitutional claims. No, I understand that. It's a hypothetical. So it would be the same, it would be the compensatory damages. Eight hundred and thirty-two dollars? Yes, it would. And that's what the Supreme Court said in Newswedbenam, which had said that nominal damages are the default. I want to continue. I understand that the facts I've just given you are not this case, but I just want to get some clarity about my hypothetical before we go to the facts of this case. In the hypothetical I just gave, your client still got the surgery. So you agree that in that world, you also could not have gotten an injunction. That's correct, Your Honor. You agree that under this court's precedent, that since your client had already gotten the surgery, you also could have not gotten a declaratory judgment. Not a prospective declaratory judgment, that's right. Well, I'm going to come back to you because I don't know what a retrospective declaratory judgment is. And in that hypothetical, because you had gotten compensatory damages on your sole constitutional claim, you could not have gotten nominal damages, right? Yes, under Newswedbenam, that's correct. Okay, so now I'll relax the hypo. And here, let me ask you the question. Why does it matter that you've asserted two different legal theories that are seeking to remedy what to me seems pretty clearly one Article III injury in fact, the Article III injury in fact being I wanted them to perform a surgery and they said no? Well, Your Honor, because Newswedbenam says that every completed violation of a legal right necessarily inflicts its own injury. Even those injuries can be redressed through nominal damages, even if they're not quantified in monetary terms. So in this case, the constitutional claims inflicted distinct injuries beyond the mere denial of the surgery. The Establishment Clause claims inflict distinct harms of being discriminated against based on your religion. And the Equal Protection claims inflict distinct dignitary harms of being treated unequally by your own government. It's one thing to be discriminated against on the basis of sex. It's quite another thing when your own government does it. And when they do it based on a religion, doctrine, you don't even believe it. Wait, so then let me ask you a Title VII. I mean, this happens literally all the time. People assert a violation. They sue their employer under Title VII and they allege multiple grounds of prohibited discrimination under Title VII. That happens like literally all the time. So a person, let's just say sex and well, if it's Title VII, I guess it wouldn't be sex and age. But fine, let's just say they bring an ADEA claim alerting age discrimination. They bring a Title VII claim asserting sex discrimination. In the complaint, they ask for $10,000. The district court dismisses the ADEA claim, but they win the Title VII claim and they get an award for $10,000. Does that person have standing to appeal the dismissal of the first claim? Well, if they've requested nominal damages, then I think they would. I don't think that person in the real world would appeal because the purpose of that suit is to recover the compensation. But that's not the purpose of every suit. That wasn't the purpose of the suit in Uswegbenim. That wasn't the purpose of the suit in many nominal damages cases. So here, Mr. Hammons could have asserted- Can you say a nominal damages case? That's not this case, right? Like the Supreme Court talked about nominal damages as a default, right? If your rights are infringed, you get or unless you can prove something else, like compensatory damages or statutory damages. And those supersede the nominal damages. Your Honor, I think that's exactly correct. And that's the answer to Judge Hyden's hypo about if you have a single claim, the default remedy for that claim is nominal damages. What do you want for these other claims that you're appealing? Well, we could have quantified the harm in if Mr. Hammons suffered additional emotional distress by the- It's one single injury. But well, it's one event that one concrete injury, but Mr. Hammons could have and chose not to, as he's entitled to under Uswegbenim, try to monetize or try to put a number on- The question for the court is what would ruling on these claims accomplish, right? And so for us, the question is what do you still want that you don't have? How would the court ruling on these claims change the results in the real world in any way? Well, Your Honor, I think that is exactly the same argument that motivated the 11th Circuit in Uswegbenim. And that's this exactly the same argument voiced by the Chief Justice in his dissent. I think exactly those same arguments could be made in Uswegbenim's case, you know, himself. He was mooted for injunctive relief. Providing him nominal damages wouldn't change a single thing in the real world. But the court still- It would give him nominal damages in the real world. Well, it would give us nominal damages in the real world. You're right. You got the $2. Well, so if we should talk about the second motion to dismiss, I can move on to that one too. I mean, the Chief Justice and Justice Kavanaugh were clear in their dissents and their concurrences that someone could terminate a claim for nominal damages by giving the money, but they'd also have to submit to a judgment against them. No, they pointed to Nike and said that that's not the rule. They said, and already the court made very clear that the parties can still disagree about liability in the underlying suit, but moot the case by agreeing not to, you know, that they're paying and they're not going to pursue the claim anymore. Well, Nike was sued for prospective relief, I believe. And again, that's exactly the argument that the Chief Justice made in both Campbell Ewald and in Uswegbenam, that he relied on the cases for prospective relief. And it's completely true that a claim for prospective relief can be unilaterally terminated, but Campbell Ewald and Uswegbenam say that's not true for nominal damages. Counsel, going back, I guess, to the first one, understand your argument. But the claim in Uswegbenam, in that case, we're not dealing with two separate claims like we have here, correct? So I think we all understand. There's not a case that you're citing to that's like this one, where someone has said, you've gotten in one claim all the compensatory damages that you want, all of them, there's no injunctive relief, and you get to assert a separate claim for the same relief and seek nominals there. Do you agree with that? I don't completely agree with that. What's the case then? Well, the Second Circuit case in Amato and the Companion 9 Circuit case, where that was a single injury inflicted by two different tortfeasors. And the argument, as the argument is with any double recovery case, was that you already got your complete recovery from one of the defendants. Having a judgment against the other defendant wouldn't change the amount you get in the real world. Okay, so this is just a, I swear it's just a clarifying question. But do you know any case that doesn't involve multiple tortfeasors? Well, I know in Grimm, he won on both alternate claims, precisely in he got nominal damages for both claims. In BPJ, there were claims under Title IX, there were claims under the Equal Protection Clause. It's pretty common for multiple claims to be decided. Let me then rephrase Judge Quaddabom's question. Do you know of a single case where a single plaintiff got from a single defendant both compensatory and nominal damages for the same Article III injury? Yes, it's cited in our opposition brief. I think there's a, it happens to have, it's an example, it's a district court case in the Northern District of California, which says precisely because you've already recovered, I think it was a state substantive process and a federal substantive process. And it said because you've already recovered on your federal substantive process claim, we're not going to award you compensatory damages for both claims. We're going to award you nominal damages for the state one in precisely in order to avoid- Okay, but you just told me that's a district court case, which has all, but in addition to the obvious problem with that, the other is that because that was a district court case that by definition didn't raise any standing to appeal questions because, well, it's a district court case, right? Well, well, it didn't raise a standing to appeal, but it raised the same argument. I guess what I'm just trying to understand is in what way you're aggrieved by the district court's judgment, right? You wanted the district court to give your client an award of $832 compensatory dollars in damages. The district court gave you an award of $832 in compensatory damages. So this is part of my intuition that this might be more standing to appeal than mootness. I don't understand how your client is aggrieved by the district court's judgment. Because the constitutional harms, which are independent violations of legal rights that inflict their own injury and provide distinct dignitary harms- Okay. So you've now brought that up again. Where in your complaint do I see the words dignitary harms or any remote synonym for dignitary harms? Well, these claims were dismissed at the pleading stage for the constitution. Right. Which means on the complaint, where on the complaint does it say, as a result of this, my client suffered dignitary harms? Well, Your Honor, we would have had a chance to amend our complaint on the-  Well, they were already dismissed on the sovereign immunity claim. So based on, we could have amended to describe additional harms. We weren't able to because they were dismissed at the sovereign immunity. So we never had a chance to articulate those harms more, do discovery more. His webinar is pretty clear that a plaintiff has a choice. They can always try to quantify something more. Maybe he went to more therapy sessions because religion was used to discriminate against him. Why would you need discovery for that? I mean, that's his experience and his dignitary harm. I'm not saying we wouldn't need discovery. Well, you made a reference earlier to, you said, well, we could have amended, we could have had discovery into this. I mean, we didn't have a chance. Isn't the complaint your chance to allege all the harm that has occurred to your client? Well, we, the complaint is a short and plain statement where the plausible inferences have to be done in our favor. And here, I'm not saying we would need discovery about his harms. He could have put up, you know, more discovery to demonstrate his harms on constitutional claims. They were dismissed at the outset. And, you know, defendants filed an amended answer. We could certainly have amended our complaint during the course of the lawsuit to further flesh out our harms instead of having it being frozen in time, only one bite at the apple. So if the court thinks we need to allege more, then we should be given an opportunity to allege more. I just want to say, in his webinar, the court pointed out that this idea that you need a viable claim of compensatory damages in order to sustain nominal damages, it's self-defeating in terms of Article III, because as soon as you discover... I don't think anyone's suggesting otherwise. I think what it's, what we're suggesting is when you, for the same Article III injury, have elected compensatory damages stipulated to them and a judgment has been entered, do you get to seek nominal damages for a claim for the same injury? I mean, that's the case that, that's the scenario that there's not a case for. And so I think the suggestion, you're fighting an issue we're not disputing, but you're seeking to do something besides that. Well, Your Honor, so I think what's important here, though, is that we stipulated to those compensatory damages for the Section 1557 claim. As far as the constitutional claims were concerned, they were out of the case. We said nothing about, and strictly speaking, we've never said anything about what his harm was on the constitutional claims. Those have been, those were dismissed from the outset. All of our harms that we quantified were all in the context of just the Section 1557 claim. You know, we may well be able to come up with, if we need to come up with additional money connected to those claims, we might be able to come up with additional money to tie to them. We've never had a chance to, this is a premature argument because it was dismissed at the threshold on sovereign immunity, and I see my red light is on, it was dismissed at the threshold of sovereign immunity. So all these questions about what are the scope of damages we could have had for the constitutional claims, we never got to flesh out as you would in a normal case. Thank you, Counsel. Thank you, Your Honor, and may it please the Court, Sean Murata on behalf of the Appellees, UMS, and St. Joseph. Mr. Hammond suffered one injury when his hysterectomy was canceled at St. Joseph. The inconvenience and also wages of having to reschedule his surgery on a different day at a different hospital by the same surgeon that happens to be 1.5 miles away from St. Joseph. But Mr. Hammond's has been completely compensated for that injury. What Mr. Hammond's is alleging is that he suffered a single injury that was unlawful for three reasons. First, that it violated the First Amendment, second, that it violated the Equal Protection Clause, and third, that it violated Section 1557. And as we've been talking today, although there is no case that is squarely on point for Mr. Hammond's, there is a case that's on point for UMS and St. Joseph, and that's Ritchie. Ritchie was a case at the Supreme Court where there was a Title VII claim and there was an Equal Protection Claim. And the Court said, we are not going to address the Equal Protection Claim because when we resolve the Title VII claim, we will have resolved everything that this case has to go for it, and we don't need to address a constitutional claim unnecessarily when we have a statutory claim that provides complete relief. That is the exact same thing that we have here. So the implicit in that is, do you agree that under the Affordable Care Act, you can't get emotional distress damages? I do. And under the Constitution, you can? So under Section 1983, it allows damages similar to tort, and tort law generally allows, for instance, mental distress damages. So, for example, if this complaint had alleged emotional distress damages, that would sort of take the legs out of your first argument because then the person, by losing the constitutional claim, would have lost a form of relief they couldn't have gotten on the claim they won on? I think that would be right. I think on the facts of this case. No, I understand. The facts of this case. I'm just saying it's a conceptual matter. I think as a conceptual matter, that's probably right. I mean, they would have to be mental distress damages, such as like in the pain and just pain and suffering. No, I guess I'm just thinking of examples of like, people constantly, they'll plead a contract claim and they'll plead a fraud claim. Then they win their contract claim but lose their fraud claim. But then they say, yeah, but if I'd won my fraud claim, I would have been eligible for punitive damages. And you're not eligible for punitive damages on a contract claim. So I actually am injured by the loss of my fraud claim. Yeah, so there's some additional category of damages that would be available. But if that's true, how specific do you have to be? Do you really have to allege every form or component of compensatory damages? I don't think there is anything in this complaint. And I don't even hear Mr. Block today to say in the complaint that there is any allegation that Mr. Hammond suffered pain and suffering in the tort sense. Because, I mean, normally, you know, you wouldn't have to say, okay, I don't think you'd have to say in a traditional contract or additional court case, I want, you know, medical expenses and, you know, reimbursement of my car and everything like that. So, I mean. But you would put the facts in the complaint that support that. And as Judge Hyten said, and as I think the panel has been discussing this morning, there's no even facts in the complaint that would support a mental distress claim. And I think also on the facts of this case, there's a lot of causation issues around even trying to make that claim. Because that's a whole different issue. Well, but I just think explaining why, for instance, this complaint might not include that. For instance, you know, Mr. Hammond refers to the anxiety he felt at having his surgery delayed. But a big reason that his surgery was delayed as long as it was, was because of one, COVID, and two, because his surgeon, even though the surgery was canceled several weeks prior, his surgeon did not actually call him until the night before to cancel the surgery. I'm not saying any of that. Why isn't that anxiety reference enough to implicate emotional distress? Because emotional distress is more of the pain and suffering sort under Section 1983 tort law. It's like when you get in the car accident, you feel the pain and suffering. But again, I don't think we need to sort of dive into all of this because I do not even understand Mr. Block today to be saying that there is something in this complaint that alleges pain and suffering. It's just that perhaps they could have in some different complaint. Also, I'm looking at the stipulation. What do you think is the relevance of the language of the stipulation? The stipulation says plaintiffs and defendants hereby stipulate and agree that plaintiff's compensatory damages total blank. They don't say include. They don't say on the ACA claim. They say plaintiff's compensatory damages total blank. The party stipulated to that. What do you think is the significance of that? I think the significance of that is that there has been a stipulation that all of the compensatory damages that can be recovered for the injury, which again is the cancellation of the surgery, constitute that amount. We have given Mr. Hammonds every single dollar that he quantified on his claim. And there's nothing else to give him. So is your argument mootness mootness or prudential mootness? I think it goes more to Judge Hyten's question about is this standing to appeal or is this mootness. I do think that both of them point up at the same point, which is there's nothing more to give him. If the court were to say that it's more that you don't have standing to appeal, I think that is... On the theory that you're not aggrieved by the disappointment. Yes, you're not aggrieved by the judgment, correct, because there's essentially nothing wrong with the judgment. You've gotten all you can. And I think this goes back to core Article III principles, because what Mr. Hammonds is really asking for is an advisory opinion. He would really like the Article III courts to say something about the First Amendment in relation to UNS and St. Joseph, but he does not have a prospective relief claim, which is how most civil rights test cases achieve that goal of getting a statement from the Article III courts. I'm not suggesting he should have decided this, but had he not in fact gotten the surgery, he would obviously have standing to seek an injunction, right? Oh, I think that's right. I mean, I do think if there were some sort of prospective harm because I would like my surgery at St. Joseph, they are not letting me have it. I believe that violates the First Amendment. I would like the right to go forward. Yes, that would support prospective relief. But in fact, when you read Mr. Hammonds' testimony, he says, I actually don't have any particular preference as to where my surgeon does the surgery. It's just that's where he happened to have scheduled it. I want the surgery because I need the surgery, and I'm not going to wait several years while we litigate a case to decide whether this hospital has to do the surgery. I think that's right, and I think it's also more fundamentally, you know, he, Mr. Hammonds selected the surgeon. The surgeon selected the hospital. Mr. Hammonds testified that I didn't really know anything about St. Joseph. That's just where the scheduler said it was going to be done. So when it was moved to a different hospital 1.5 miles away that does not have the same objection, Mr. Hammonds had a surgery there. He chose the surgeon. Could I move you to motion to dismiss two? I'm sorry? Could I move you to motion to dismiss two?  Would we have to create a circuit split with the Third Circuit to rule for you on that issue? I don't think, you know, I don't think motion to dismiss two has to be reached. I think honestly, I'm not asking you if it has to be reached. I'm asking you if... I don't know if you'd have to create a circuit split. I think it deals with notions of tender, the notions that, you know, you've gotten everything you wanted, even if you light the money on fire because you don't want it, you've still received it from us unconditionally. I don't know what sort of the additional having a piece of paper that constitutes judgment would add to it. But again, I think, you know, motion to dismiss one is a complete grounds to dismiss the appeal and then to dismiss our cross-appeal, which is explicitly conditional. It wouldn't have to be, right? That's... I never encountered a situation where there's... I guess this has become a thing. I've had several cross-appeals lately that didn't strike me as cross-appeals because the person is simply seeking to affirm the judgment on alternative grounds, which is not a cross-appeal. But yours isn't in that sense, right? And I guess the conditional cross-appeal normally is, well, if you give the appellant what they want in the merits, then I'd like to raise some objections while we're here too. This is just a weird conditional cross-appeal. It's like we'd prefer to win one topic on mootness. And even if we didn't win that topic on mootness, we absolutely could still appeal this other thing, but we just don't want to appeal that other thing. I mean, that's right, Judge. I just think it's a weird factual... I've never seen a case like this ever. Well, I mean, I think a conditional cross-appeal at its core is, we're happy with what happened and we're content with what happened in the district court. But if they're going to appeal, I guess we'll bring up some things too, which is sort of the first category. If the stipulated judgment were all there was and there was no appeal, we are content with what happened in the district court. We are content to give Mr. Hammond... And then procedurally, would you dismiss? I'm just trying to figure... Well, I guess you didn't file within the appeal deadline. You filed within the cross-appeal deadline. I don't know off the top of my head. Well, I guess I'm trying to think of, would we just dismiss the cross-appeal? I think you would dismiss the cross-appeal, which was explicitly stated to be conditional on... Because our position is there should be no appeal because there's no standing or it's moot to do so. So our position is, we're sort of tagging along on Mr. Hammond's main appeal. Despite the fact that you very clearly would have had standing to appeal. We would. But I think that's the notion of sort of all conditional cross-appeals, which is we lost some stuff in the district court. We don't like it, but we don't think it's worth making a federal case out of it at the court of appeals. But if we're going to be here anyway, we might as well mention it, which I think is sort of the nature of our cross-appeal. I have some questions on the merits. Sure. The court would like to move to the merits. I genuinely don't understand the LeBron-Ram Dass distinction and what applies when, and it's extremely confusing. But can I give you... It just seems weird to me that it seems like there's at least three categories of cases where the state action sovereign immunity question comes up. One is, is this the government at all? The company town example. It makes total sense to me to do the Ram Dass analysis in that context. Another context would be, this is definitely the government, but is it a part of the government that has sovereign immunity or a part of the government that doesn't have sovereign immunity? I'm thinking of the cases about, is a county sheriff, a state officer, or a county officer? And the reason that matters is because the state has sovereign immunity and the county doesn't. And in that context, the Ram Dass factors make total sense to me too. They don't seem to make sense to me in the context of, this is an entity that we agree is owned by, created by, or controlled by an entity here, the state of Maryland, that absolutely has sovereign immunity. Notwithstanding what the 10th circuit said, I'm inclined to think those are two fundamentally different types of inquiries. Do you agree or disagree with that? I agree with that. And I think that gets to the point of, once you've decided that someone is a LeBron entity, once you know you've fallen into that third category, doing the Ram Dass analysis... Ram Dass, sorry. Yeah. Doing the Ram Dass analysis doesn't make a whole lot of sense because they both point, they're both asking the same question, which is, who is the state? And for instance, nobody is claiming that UMS is a county. Nobody's claiming that... Or a purely, purely private entity. No one's claiming that it's Exxon Mobil or something. That's right. I mean, and to be clear, I want to be very clear as to how, if the court were to reach the merits, how we think is the best way through these problems, which is to say that we don't actually need to decide whether UMS is the state of Maryland. Rather, on the assumption that it is, then it clearly has either sovereign immunity or it is not a person for Section 1983. And I should emphasize the 1983 point because if you rule on the ground that we are not a person for Section 1983, you don't have to address the question as to whether the state of Maryland has waived UMS's sovereign immunity. So that way, you can sort of hit only one particular statutory question and avoid a whole lot of constitutional ones that are very important to UMS and to St. Joseph. You're talking about UMS, not the subsidiaries that it owns? So in this case, the district court treated, and I think the parties have largely treated, UMS and St. Joseph as largely to be interchangeable with respect to this inquiry. They're not interchangeable because they are distinct corporate entities. So they've largely treated them the same. And what we are suggesting is the best path through this case is to say that on the assumption that UMS and St. Joseph are the government under LeBron, it is not a person for Section 1983, and therefore, you can stop because you don't have to reach, then, the question of waiver of sovereign immunity. If you did reach waiver of sovereign immunity, we think it's quite clear that we have not waived in respect to how states waive their sovereign immunity. But I'm not sure waiver is the right, the reason I teed up this question of, I'm not sure that's the right question because it also, but it seems weird to me to say that it, I mean, just high level of generality, it would be a little bit weird to say that an entity that the relevant statute specifically says is not an agency of the state of Maryland. It literally, in Maryland state law, says this agency is not an agency of the state of Maryland, has sovereign immunity. I don't actually know how much more clear you could say this entity does not enjoy the state's sovereign immunity than saying this entity is not an agency of the state of Maryland. Well, I think the key difference, Judge Heitens, is because this is a federal court case. Under Allen versus Cooper, from this court, you have to show that there has been a waiver to suit in federal court. So it may be that the state of Maryland- But that presupposes that LeBron entities presumptively have waiver, and I'm just not sure that's true. Oh, I think it very much is true because LeBron says that, but for- Are we about to put a tremendous amount of weight on one word in LeBron, because I suspect that's what you're- I don't think it's one word, but I do think it's one passage, which is where LeBron says that Amtrak, as a LeBron entity, is no different than the Federal Communications Commission. It's no different than- For state action purposes. It doesn't say that for sovereign immunity purposes. Oh, but I think it gets to the question of who is the state, and the question is- No, no, no. The question, LeBron, is who takes on the state's obligations for constitutional purposes, which at least in principle, notwithstanding some broad dicta and a footnote in one of our opinions, which I suspect you were about to respond with, it doesn't seem at all obvious that saying you have to take on some of the obligations of the state sometimes means you get all of the benefits of being the state. I mean, I think this gets to, in addition to what Your Honor just referred to, the American universal underwriter case- Let's assume that I think that's obviously over broad dicta. But I'm referring down to the Sixth Circuit case that we discussed in the briefs where we say, you have to take the bitter with the sweet. It seems odd to say that they have all the obligations of what it is to be the government, but none of the benefits that the government enjoys. But doesn't LeBron say over and over that's exactly the case, that entities can be the government for some purposes, but not for others? But I think LeBron also did it to the extent you think that the sentence in LeBron is not dicta about Amtrak is not an agency of the United States. It assumed a baseline of there is sovereign immunity, but then found that the government had waived it. It doesn't say waived. It says deprived, right? But I think it's by depriving it, I think it's that there's a baseline that it had it, that something was taken away that it would otherwise enjoy as a entity that is part of the United States, no different than the Federal Communications Commission or Securities and Exchange Commission. And it's different in the state calculus because of what this court and the Supreme Court have said as saying that, particularly under the 11th Amendment, states may be more than happy to be sued in their own courts, but not be equally happy to be sued in a federal district court. And that's why they require a waiver of sovereign immunity that is so explicit as to the federal aspect of it. Okay, so this is a danger. You mentioned 1983. Under certain circumstances, private actors can be acting under state law for purposes of 1983, right? That's right. Do those folks get qualified immunity? No, but I think it's... Right. So it turns out I can be acting under the color of state law for purposes of being sued under 1983 without getting all the benefits of being a person who actually works for the state. So why isn't the same true here? You can be a state actor like Amtrak for purposes of the First Amendment, but that doesn't mean you get the federal government's sovereign immunity. Oh, I think that's right. But I think what LeBron says is it's not just people who have sort of been acting in concert with the state, which is what I understand in the 1983 cases to be talking about, but rather is in fact the state itself. Although the state has tried to separate itself from the Amtraks of the world, it nonetheless cannot do so as a constitutional matter because it retains the essential control over the entity. In other words, you can't, through the artifice of corporate organization, disclaim somebody who is otherwise part of the state. But the people who are acting in concert in the 1983 cases, the claim is not that they are government employees or the state. It's just that they are acting so in concert with the state in that particular instance that they are said to be acting under color of state law. So, for example, the West case where the prison contracts with private doctors and they're subject to 1983 under the argument or under the principle that you can't contract away state action, that private doctor wouldn't in your world be entitled to sovereign immunity because it's different than the defendants here? You know, I'm not as conversant with that particular fact pattern, so I don't want to make statements about people that I don't represent, but I do think the key difference is that when you are a LeBron entity, you are in all things that you do the state. I just think LeBron says over and over again, that's not true. Well, I mean, you can be for certain statutory purposes, not the state. In other words, for everything that is within Congress's power to waive, things like the Freedom of Information Act and the Administrative Procedure Act, sure, Congress has control over you are the state for those purposes. But for the Constitution, you are just as much the government as the Federal Communications Commission is, is what the court said in LeBron. So I think that, so when I think it says over and over again, you can be for some purposes and not others, it's referring to the statutory things that the government is, you know, federal contracting, of course, Congress gets to decide, but not for the Constitution, unless the court has further questions. Thank you. I have a couple key points I'd like to hit and hopefully be able to talk a little bit about the merits, too. The first is on page 36 of the JA, paragraph 59 of the complaint. It says, Mr. Hammonds felt shocked, angry, afraid, and devastated. He felt he was being told his health and well-being were not worthy of being treated in the way that he was being treated, which is part of his own state government, was using other people's religious beliefs to deny him the medical treatment he needed. Now, we don't think that we necessarily need to quantify that in terms of dollars and cents in order to have a live claim for nominal damages, but we're happy to do so if the court thinks that's necessary. And again, this is on a complaint on a motion to dismiss where inferences need to be drawn in our favor, not against us at every turn. Similarly, with the stipulation... Did you, in response to this motion to dismiss, did you ever respond that, like, no, there's a category of compensatory damages that we are still entitled to and have not received? No, we didn't. But your response was, we could get nominal damages, and that's all we want. Well, we do think under ex-wagnum that that's what we're entitled to choose not to quantify. Ex-wagnum is very clear that you can... Choose not to quantify, but I don't recall you even saying, like, we haven't quantified it yet, but there's a figure somewhere that can be quantified of compensatory damages based on the sort of mental distress that's only religion, equal protection, mental distress. Well, we did mention punitive damages. We didn't talk about additional compensatory damages because we think we're right on the nominal damages issue, but I think that in terms of drawing inferences in our favor, I think it would be really inequitable to, because these claims were dismissed at the pleading, and then we had quick motions to dismiss that we had to respond to, to construe all those against us. Okay, but then you filed a merits brief where you could have also said, by the way, here's some additional thoughts on the motion to dismiss. We didn't have time in responding to the initial motion. I didn't think that was procedurally proper in the merits brief to do that. I thought that would be taking an additional surreply, which wouldn't have been appropriate. So can you turn to this, because I was going to ask, if you didn't bring up the stipulation, I was going to ask about the stipulation. Yep, I have it right here. I mean, it specifically says, in light of, it's specifically in the context of Section 1557 of the Affordable Care Act. Maybe the first sentence doesn't reference Section 1557, but the second paragraph does. All the compensatory damages we're talking about were those proven up, and this was a stipulation to resolve the amount of damages that were proven up. So all that's a reflection. It's not an amendment to our complaint. It's saying, for purposes of the damage calculation that remained on the Section 1557 claim, we don't need to go to trial. We can agree on this. A little bit on the merits of the sovereign immunity. I think this bitter-in-the-sweet argument that defendants have, it just conflicts with first principles of, you look at municipal corporations under the 14th Amendment versus the 11th. Municipal corporations are part of the state under the 14th Amendment, but they do not share the state's sovereign immunity under the 11th Amendment. And similarly, the Sixth Circuit case they rely on, that's a Bivens case about the federal government. So regardless of whether you're always a state or you're not the state, makes sense at the federal level, it just conflicts with black-letter law at the state sovereign immunity level. This isn't some special unfair rule being applied to you, MMS. It applies to every time someone sues a municipality. They're, in a sense, having it both ways. And then, Judge Heidens, you referenced a footnote. I assume you're talking about white coat, where it said you're a state actor for all purposes. Is that the dicta that? I think so. Yeah, so I would just emphasize, that doesn't say you're the state for all purposes. It says you're a state actor for all purposes. And again, being a state actor is critically different from having the state's sovereign immunity. I haven't addressed the Section 1557 argument at all, which they have a rebuttal on, too. I'm happy to address it, but I'm also happy to not, if the court doesn't think they're going to be reaching that issue. Do you have any questions? I do. Do you have any other questions? Okay. In that case, I'd respectfully ask the court to give us a chance to proceed past the pleading stage on a case that was wrongly dismissed for sovereign immunity, and let us have our full day in court on the constitutional claims. Thank you. When time is in, Your Honor, my two minutes is just for the cross appeal, so I am happy to submit on that unless the court has questions. No questions? Thank you, Your Honor. Thank you very much. Appreciate both parties' arguments. We'll come down and greet counsel and move on to our next case.
judges: A. Marvin Quattlebaum Jr., Allison J. Rushing, Toby J. Heytens